UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ELTON MIHALI,

                Plaintiff,                              **COMPLAINT**

       - against -

BLACKBIRD WORLDWIDE CORP. and          **JURY TRIAL DEMANDED**
GULRAJ GREWAL,

                Defendants.

-----------------------------------------------------------x

      Plaintiff ELTON MIHALI, by his undersigned attorneys, alleges for his Complaint against defendants as follows:

## INTRODUCTION

    1.    This is an action to recover unpaid wages and withheld gratuities and related relief, brought by a former employee of defendants under Section 16 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, and Sections 196-d, 198 and 663 of the New York Labor Law ("Labor Law") and related regulations issued by the New York State Department of Labor.

## JURISDICTION AND VENUE

    2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, which grants this Court original jurisdiction over claims involving a federal question of law. Supplemental jurisdiction over the New York Labor Law claims exists pursuant to 28 U.S.C. § 1367.

3. This action is brought in this District pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to plaintiff's claims occurred in this District.

## PARTIES

4. Plaintiff Elton Mihali ("Mihali") was employed by defendants as a chauffeur or driver from on or around November 10, 2014 to on or around May 22, 2016. He resides in Brooklyn, New York.

5. At all relevant times, Mihali was an "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1), and Section 190(2) of the Labor Law.

6. Upon information and belief, defendant Blackbird Worldwide Corp. ("Blackbird") is a New Jersey corporation with offices located at 1330 Hamburg Turnpike, Wayne, NJ 07470.

7. Blackbird operates a chauffeured car and limousine business.

8. Upon information and belief, defendant Gulraj Grewal ("Grewal") is the president of Blackbird. Upon information and belief, Grewal is Blackbird's largest, if not sole, shareholder and resides at 1901 Manor Drive, Wayne, NJ 07470.

9. At all times relevant to this action, Grewal personally oversaw and managed Blackbird's overall and day-to-day business activities, including the determination of employee wages, the method and manner of payment to employees, and hiring, firing and other personnel policies and actions.

10. At all times relevant to this action, each defendant was an employer of plaintiff within the meaning of Sections 2(6), 190(3) and 651(6) of the New York Labor Law and Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. At all relevant times, Blackbird had (i) an annual gross volume of sales or business e.g. of no less than $500,000 and (ii) employees engaged in commerce or in the production of goods for commerce, or who handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce.

12. At all times relevant to this action, Blackbird was an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

## FACTS

13. Plaintiff was employed by defendants from November 2014 to May 2016.

14. Plaintiff's job duties while employed by defendants consisted of driving Blackbird's customers in a vehicle owned by Blackbird. Most of the trips originated and/or ended in Manhattan.

15. In addition, when plaintiff was not actually driving Blackbird's customers, or en route to pick them up, or otherwise engaged in work for defendants, plaintiff was required to be "on call" for significant periods of times between trips. While on call, plaintiff was required to remain in close proximity to his Blackbird car and be ready to immediately respond to a call to pick up a passenger, and the timing of these calls or assignments was not scheduled or predictable, making it impossible for plaintiff to use this time effectively for his own purposes.

16. Defendants did not pay plaintiff for all of the hours he worked. Some of this underpayment of wages is explained by the fact that defendants failed to pay plaintiff for time he spent traveling what were often long distances to pick a customer up (*e.g.*, in Connecticut, New Jersey, Westchester County, or elsewhere in the New York City metropolitan area) or traveling back to New York City after dropping a customer off (*e.g.*, in Connecticut, New Jersey, Westchester

County, or elsewhere in the New York City metropolitan area). (This was a frequent problem, in particular, when traveling to pick up the first customer of the day and traveling back from dropping off the last customer of the day). Some of the underpayments are due to defendants' frequent failure to pay plaintiff for all of his "on-call" hours and/or hours spent between assignments, waiting to be given his next assignment. And some of the underpayments are due to the fact that plaintiff was required to arrive at a pick up destination at least fifteen minutes prior to the scheduled pick-up time but defendants did not pay him for the time prior to the pick-up time (*i.e.*, the time he was required to be at the pick-up destination, waiting for the passenger).

17. Plaintiff's total weekly hours worked were routinely understated by defendants on the pay stubs they provided him with his wage payments; plaintiff was not paid for all of the hours that he worked (including both regular or straight-time hours and overtime hours); and plaintiff was not paid all of the overtime premium he should have been paid for hours worked in excess of forty hours in a workweek.

18. For example:

(a) On March 10, 2016, plaintiff picked up his first customer in Manhattan at 5:45 a.m. Defendants did not clock plaintiff in and start paying him for any time prior to 5:45 a.m., despite the fact that (i) plaintiff had to travel to Manhattan from Brooklyn to pick the customer up and (ii) plaintiff arrived at the pick-up location, as required by defendants, at or prior to 5:30 a.m. Defendants also failed to pay plaintiff for the time he was on-call between this first trip of the day (which they stopped paying him for at 6:45 a.m.) and his next trip (which they started paying him for at 11:00 a.m.).

(b) On December 23, 2015, plaintiff picked up his first customer in Larchmont, New York at 6:45 a.m. and drove the customer to JFK Airport. Defendants failed to pay plaintiff for the time he spent traveling from Brooklyn to pick up this customer and failed to pay him for the time he spent at the pick-up location prior to the actual pick-up, waiting for the customer, as he was required to do by defendants. Defendants also failed to pay plaintiff for time that he was on call that day between 8:45 a.m. and 2:00 p.m.

(c) On February 29, 2016, defendants only paid plaintiff for 53 minutes of work, even though he was on call that day beginning at 12:00 noon, then drove from Brooklyn to Manhattan for a 3:30 p.m. pick up (his first pick up of the day), then drove that passenger from Manhattan to JFK Airport, and then drove home to Brooklyn. In all, plaintiff worked at least four hours more than he was paid for this day.

19. Blackbird routinely paid plaintiff less than the full amount of gratuities it collected on his behalf from its customers, who paid Blackbird directly for its services, rather than paying its drivers, such as plaintiff.

20. For example, on November 24, 2015, plaintiff picked up a passenger at approximately 2:15 p.m. at 112 East 19th Street, New York, New York and drove the passenger off at John F. Kennedy International Airport. Blackbird paid plaintiff $15.80 for the gratuity allegedly paid by the customer when, in fact (upon information and belief), Blackbird actually received a $24.00 gratuity payment from the customer (which was the standard recommended gratuity that was billed to customers for trips to JFK at the time for the type of vehicle that was driven by plaintiff).

21. Other examples of Blackbird keeping some of the gratuities customers paid to

Blackbird as a tip for plaintiff include:

(a) On September 17, 2015, defendants collected $22.00 as a gratuity for a trip that began at 12:00 noon in Manhattan and ended at LaGuardia Airport but only paid $13.20 of the amount collected to plaintiff.

(b) On August 4, 2015, defendants collected $22.00 for a trip from Manhattan to LaGuardia Airport that had a pick up time of 4:45 p.m. but only paid $11.80 of the amount collected to plaintiff.

(c) On February 22, 2016, defendants collected $24.00 for a trip from Manhattan to JFK Airport that had a pick up time of 6:00 p.m. but only paid $15.80 of the amount collected to plaintiff.

(d) On August 6, 2015, defendants collected $24.00 for a trip from Manhattan to JFK Airport that had a pick up time of 5:45 a.m. but only paid $15.80 of the amount collected to plaintiff.

22. Plaintiff frequently worked in excess of forty hours in a work week while employed by defendants. Defendants often failed to pay him an overtime premium for all of the overtime hours he worked in a workweek (*i.e.,*, the hours he worked in excess of forty hours).

23. Plaintiff estimates that he that he is owed at least $9,000 in unpaid overtime wages during the period he was employed by defendants. He also estimates that defendants kept at least $16,000 in gratuities that were collected on his behalf from customers during this period. The actual amounts in wages and gratuities owed to plaintiff may be higher, depending upon what the time and other records maintained by defendants show.

24. Plaintiff was, at all times, a non-exempt employee as that term is used for purposes

of the Fair Labor Standards Act and N.Y. Labor Law. His primary duties consisted, at all times, of non-exempt work and he was paid on an hourly basis and treated as a non-exempt employee by defendants who acknowledged he was entitled to overtime wages for overtime hours he worked.

25. Defendants failed to provide plaintiff with a written notice providing all of the information required by N.Y. Labor Law § 195(1)(a) within ten business days of his hiring or at any other time thereafter.

26. The pay checks stubs that plaintiff was provided when he was paid usually, if not always, failed to accurately state the number of hours plaintiff worked during the work week in question. They also never provided all of the information required to be provided by Labor Law § 195(3), such as the employer's telephone number.

### FIRST CAUSE OF ACTION: FEDERAL OVERTIME WAGE VIOLATIONS

27. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

28. Defendants have violated Section 7 of the FLSA, 29 U.S.C. § 207, by failing to pay plaintiff one-and-one-half times his regular rate of pay for each hour he worked in excess of 40 during a work week.

29. Defendants' failure to pay plaintiff for the overtime hours he worked (and their other violations of state and federal law alleged herein) was not done in good faith and not based on a reasonable belief that its payroll practices complied with the law and was instead willful or done with a reckless disregard for its lawfullness.

30. Defendants are liable to plaintiff in the amount of the unpaid overtime compensation

he should have been paid, plus an equal amount in liquidated damages, plus reasonable attorney's fees and the costs of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION: NEW YORK STATE OVERTIME VIOLATIONS

31. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

32. Defendants have violated the New York Labor Law and 12 NYCRR § 142-2.2 by failing to pay plaintiff one-and-one-half times his regular rate of pay for each hour he worked in excess of 40 during a work week.

33. Pursuant to Labor Law §§ 198 and 663, defendants are liable to plaintiff in the amount of the unpaid overtime compensation he was entitled to receive but was not paid, pre-judgment interest, and liquidated damages, plus reasonable attorney's fees and the costs of this action.

## THIRD CAUSE OF ACTION: VIOLATION OF N.Y. LABOR LAW § 195(1)

34. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

35. Plaintiff was not provided with the notice required by Labor Law § 195(1)(a) within ten days business days of his first day of employment or at any time thereafter.

36. Pursuant to Labor Law § 198(1-b), plaintiff is entitled to damages of $50 for defendants' failure to provide the notice required by § 195(a)(1) within ten days of his commencement of employment, plus an additional $50 per day for each work day that the violation

continued, up to the statutory maximum total of $5,000, plus reasonable attorney's fees and the costs of this action. Plaintiff is therefore entitled to damages of $5,000, plus reasonable attorney's fees and costs, for defendant's failure to comply with Labor Law § 195(1)(a).

## FOURTH CAUSE OF ACTION: VIOLATION OF N.Y. LABOR LAW § 195(3)

37. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

38. During the approximately entire period that plaintiff was employed by defendants, he was rarely, if ever, provided with regular pay statements that complied with the requirements of Labor Law § 195(3). More specifically, the pay statements that plaintiff was provided rarely, if ever, accurately stated the number of hours he had worked during the pay period in question and never listed his employer's telephone number.

39. Pursuant to Labor Law 198(1-d), plaintiff is entitled to damages of $250 for each weekly violation that occurred, plus an additional $250 per work day for each work day any such violation continued, up to the statutory maximum amount of $5,000, plus reasonable attorney's fees and the costs of this action. Plaintiff is therefore entitled to damages of $5,000, plus reasonable attorney's fees and costs, for defendant's failure to comply with Labor Law § 195(3).

## FIFTH CAUSE OF ACTION: TIP STEALING

40. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

41. By keeping payments that were collected by Blackbird as gratuities that were to be

paid to plaintiff, defendants have violated N.Y. Labor Law § 196-d.

42. Pursuant to Labor Law §§ 198 and 663, defendants are liable to plaintiff in the amount of the gratuities it improperly collected and failed to pay to plaintiff, plus pre-judgment interest, liquidated damages, and reasonable attorney's fees and the costs of this action.

## SIXTH CAUSE OF ACTION: FAILURE TO PAY FOR ALL HOURS WORKED

43. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

44. By failing to pay plaintiff for all of his hours worked in a week, defendants have violated Article 6 of the N.Y. Labor Law, including Labor Law § 191 and/or § 193.

45. Pursuant to Labor Law §§ 198 and 663, defendants are liable to plaintiff in the amount of the unpaid wages he was entitled to receive but was not paid, plus pre-judgment interest, liquidated damages, and the costs of this action including reasonable attorney's fees.

## TRIAL BY JURY

Plaintiff requests a trial by jury on all claims asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that a judgment be granted as follows:

1. Awarding plaintiff the wages he is due under the FLSA and N.Y. Labor Law for the hours he worked in excess of forty hours in a work week for which he was not paid;

2. Awarding plaintiff $5,000 in damages for defendants' violation of N.Y. Labor

Law § 195(1)(a).

3. Awarding plaintiff $5,000 for defendants' violation of N.Y. Labor Law § 195(3).

4. Awarding plaintiff an amount equal to all of the gratuities defendants collected on his behalf but failed to pay to him;

5. Awarding plaintiff all of the wages he is due under the N.Y. Labor Law for hours he worked for which he was not paid;

6. Awarding plaintiff liquidated damages under both the FLSA and N.Y. Labor Law;

7. Awarding plaintiff pre-judgment interest and post-judgment interest;

8. Awarding plaintiff the costs of this action, including reasonable attorney's fees; and

8. Awarding such other relief as this Court deems just and proper.

Dated: November 16, 2016

LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiff

By: _____
Daniel R. Bright (DB-9373)
373 Park Avenue South, 9th Floor
New York, New York  10016
(646) 588-4871